ACCEPTED
01-14-00687-CV
FIRST COURT OF APPEALS
HOUSTON, TEXAS
3/13/2015 3:53:40 PM
CHRISTOPHER PRINE
CLERK

**Cause No. 01-14-00687-CV**

_____

**IN THE COURT OF APPEALS
FOR THE FIRST DISTRICT OF TEXAS
HOUSTON, TEXAS**

FILED IN
1st COURT OF APPEALS
HOUSTON, TEXAS

3/13/2015 3:53:40 PM

CHRISTOPHER A. PRINE
Clerk

**THE BETTER BUSINESS BUREAU OF METROPOLITAN HOUSTON, INC.,
THE BETTER BUSINESS BUREAU OF METROPOLITAN HOUSTON EDUCATION
FOUNDATION, DAN PARSONS, CHRIS CHURCH, CHURCH ENTERPRISES, INC.,
GARY MILLESON, RONALD N. MCMILLAN, D'ARTAGNAN BEBEL, MARK
GOLDIE, CHARLIE HOLLIS, AND STEVEN LUFBURROW,**
*Appellants,*
**v.**
**JOHN MOORE SERVICES, INC. AND JOHN MOORE RENOVATION, LLC,**
*Appellees.*

Appeal from the 269th District Court of Harris County, Texas
Cause No. 2013-76215

**JOHN MOORE SERVICES, INC. AND JOHN MOORE RENOVATION, LLC'S
RESPONSE TO APPELLANTS' OBJECTIONS TO CONSOLIDATION OF RELATED
CASES FOR SUBMISSION**

COME NOW Appellees John Moore Services, Inc. and John Moore Renovation, LLC and file this Response to Appellants' Objections to Consolidation of Related Cases for Submission and in support thereof would respectfully show as follows:

1.    Appellees support the consolidation of these matters on appeal. As stated in their brief on the merits, Appellees argue that the first and second lawsuits should have been consolidated in the trial court. Thus, the proliferation of appeals is not John Moore's doing. Indeed, John Moore (1) attempted to bring these

claims in the original litigation by amended pleading; (2) filed a separate suit only when the Houston Better Business Bureau asserted an inapplicable stay provision to prevent that amendment; and (3) asked the trial court to consolidate the matters after the purported stay had expired. CRI:10-1, 967, 905, 1100 (Clerk's Record in Cause No. 01-14-00687-CV). If the trial court had consolidated the two actions, there would have been only one appeal after the new claims were decided.

2.      Rather, it was the Houston Better Business Bureau's rush to obtain an award of attorneys' fees that caused these matters to be separately submitted to this Court. One of Appellees' arguments in the first lawsuit was whether the claim for fees was ripe due to the pendency of the antitrust (and other) claims asserted in the second lawsuit. Ex. A at 15 (Supplemental Clerk's Record in Cause No. 01-14-00906-CV) (Supplemental Record Requested). Because the Houston Better Business Bureau has not prevailed on all claims, an award of attorneys' fees would be premature and would serve neither justice nor equity. *Id.* Thus, the two appeals are related.

3.      Consolidation now would serve the ends of justice and efficiency. The parties could have one judgment that decides all of their issues. Consider the difficulties if the attorneys' fees judgment were affirmed and the antitrust claims were remanded for trial on the merits. If the appeals continue to proceed on separate tracks, the confusion will only multiply.

Respectfully submitted,

*/s/ Douglas Pritchett, Jr.*
Douglas Pritchett, Jr.
State Bar No. 24007877
dpritchett@johnsontrent.com
Lori Hood
State Bar No. 09943430
JOHNSON, TRENT, WEST & TAYLOR, L.L.P.
919 Milam Street, Suite 1700
Houston, Texas  77002
(713) 222-2323 (Telephone)
(713) 222-2226 (Facsimile)

**ATTORNEYS FOR APPELLEES
JOHN MOORE SERVICES, INC. AND
JOHN MOORE RENOVATION, LLC**

## CERTIFICATE OF SERVICE

On this the 13th day of March 2015, the foregoing was served on the following persons by electronic service:

Lauren B. Harris
Jeffrey R. Elkin
M. Harris Stamey
Porter Hedges LLP
1000 Main Street, 36th Floor
Houston, Texas 77002
*Attorneys for Appellants*

*/s/ Douglas Pritchett, Jr.*
Douglas Pritchett, Jr.

400148.1-03122015

3

NO. 2012-35162

| | | |
|---|---|---|
| JOHN MOORE SERVICES, INC. and | § | IN THE DISTRICT COURT OF |
| JOHN MOORE RENOVATION, LLC | § | |
| | § | |
| v. | § | |
| | § | |
| | § | HARRIS COUNTY, TEXAS |
| THE BETTER BUSINESS BUREAU OF | § | |
| METROPOLITAN HOUSTON, INC. | § | 269th JUDICIAL DISTRICT COURT |

**PLAINTIFFS' RESPONSE AND OBJECTION TO DEFENDANT'S MOTION FOR AWARD OF ATTORNEYS' FEES, COURT COSTS, EXPENSES, AND SANCTIONS AND FOR ENTRY OF FINAL JUDGMENT AND PLAINTIFFS' MOTIONS TO CONSOLIDATE AND TO COMPEL**

Plaintiffs, John Moore Services, Inc. and John Moore Renovation, LLC, ("John Moore" or "Moore") hereby file this their Response and Objection to Defendant, The Better Business Bureau of Metropolitan Houston, Inc.'s ("Houston BBB" or "BBB") Motion for Award of Attorneys' Fees, Court Costs, Expenses, and Sanctions and for Entry of Final Judgment ("Motion") and, in support thereof, state as follows.

### SUMMARY OF THE ARGUMENT

The Houston BBB, by and through its counsel Porter Hedges, LLC, ("Porter Hedges"), seeks an award of $390,858.35 in fees, $6,237.77 in expenses, $62.35 in court costs, and $50,000 in sanctions. There are two considerations to an award of attorneys' fees under Chapter 27: (1) whether they are reasonable and necessary and (2) whether they are equitable and just.[1] The first consideration is a question for the factfinder, which in this case is a jury. The second is a question for the judge sitting in equity.

---

[1] While section 27.009 says "reasonable attorney's fees," necessity is inseparable under Texas jurisprudence from reasonableness. *See infra*, at p.6. In other words, unnecessary fees would be unreasonable. Therefore, this motion includes the concept of necessity when discussing the fact issues that must be decided.


Exhibit A

The primary issue before the trier of fact will be whether the amount sought by Porter Hedges in its Motion is reasonable and necessary. TEX. CIV. PRAC. & REM. CODE § 27.009(a). As the Houston BBB seeks nearly $400,000.00 in fees and expenses, close examination and careful consideration of its Motion and evidence is indeed warranted. It is against this backdrop that the trier of fact is asked to review the fees and expenses at issue. Even if the Houston BBB has presented some evidence that the fees are reasonable and necessary, it has not presented conclusive evidence. Therefore, a fact finding will be required, and John Moore has requested a jury and paid the jury fee in this case.

The primary issue before the judge will be whether the amount sought by Porter Hedges is just and equitable and whether John Moore must bear sanctions. TEX. CIV. PRAC. & REM. CODE § 27.009(a), (b). Because the Houston BBB has not achieved a dismissal of all claims that John Moore has brought, it is not at all clear that it would be just or equitable to award attorneys' fees or sanctions based on the Houston BBB's partial victory. Furthermore, the Houston BBB's own arguments emphasize the uncertainty that the parties confronted with this newly enacted statute. There was a great amount of uncertainty in 2012 whether Chapter 27 should be interpreted to apply to the claims made in this lawsuit, or what standard of proof John Moore would be required to establish to survive a motion to dismiss. Under these circumstances, it is neither equitable nor just to award almost half a million dollars in fees and sanctions against John Moore.

**BACKGROUND**

John Moore filed suit against the Houston BBB for reputational torts, fraud, and interference with prospective and existing contracts. The BBB argued that the claims against it arose out of its right to participate in government by freely speaking, associating, and petitioning

2

and filed a motion to dismiss under section 27.005 of the Texas Civil Practice and Remedies Code (the Anti-SLAPP statute).

During the pendency of the Anti-SLAPP motion, this Court allowed only limited discovery, *i.e.*, the production of BBB consumer complaints.

In response to the Anti-SLAPP motion, John Moore argued that the statute did not apply under the circumstances, and presented evidence in support of each essential element of its claims. The Court signed an order denying the BBB's motion to dismiss.

In response to this Court's denial of its motion, the Houston BBB elected to file an interlocutory appeal. As the Houston BBB notes, the preparation of this case for trial continued. Both parties engaged in discovery. In the end, the First Court of Appeals reversed this Court's order, and John Moore's petition for review was denied. The case was remanded to the trial court for further proceedings.

In light of the court of appeals' decision, John Moore amended it petition to assert causes of action (1) that were supported and suggested by the evidence discovered after the motion to dismiss was denied and (2) that would not implicate the Houston BBB's speech rights. Pursuant to the Houston BBB's motion, that amended petition was struck, forcing John Moore to file the causes of action in a separate suit and giving the Houston BBB another bite at the Chapter 27 apple.

Defendant now seeks recovery of attorney's fees, expenses and court costs under section 27.009(a) of the Anti-SLAPP statute. The statute provides that costs and "reasonable" attorney's fees shall be awarded to the moving party as "justice and equity may require." *Id.* As noted below, the determination as to the reasonableness of fees is a fact issue for the trier of fact. John Moore reiterates its demand from its original petition that a jury consisting of twelve good and

3

lawful jurors be duly qualified, tested, selected, and impaneled and the case proceed to trial on the reasonableness and necessity of the requested attorney's fees, expenses and court costs and any and all other fact issues.

John Moore also asks that the court consolidate the cases.

### ARGUMENT

The Houston BBB does not state the basis for its motion. In the latest conference with the Court, the Houston BBB has characterized it as a motion for judgment in preparation for a bench trial. At other times, the Houston BBB's attorneys have characterized it as a motion for summary judgment. In either event, the motion cannot be granted.

First, a bench trial is not appropriate. John Moore filed a jury demand, paid the fee, and this case is pending on the jury docket. Reasonableness of attorneys' fees is a question for the fact finder, which, in this case, is a jury. Second, the Houston BBB has not presented conclusive evidence that the fees are reasonable and necessary. Indeed, it is not certain that the Houston BBB has presented competent evidence at all. Finally, an award of fees would be neither just nor equitable at this time, and the question of sanctions is premature and overreaching as to amount.

### I. REASONABLENESS OF ATTORNEYS' FEES IS AN ISSUE FOR THE JURY.

John Moore is entitled to a jury trial on the question of reasonableness of attorneys' fees. Chapter 27 requires a determination of "reasonable attorney's fees." TEX. CIV. PRAC. & REM. CODE § 27.009(a)(1). Because this is a fact issue and because John Moore has requested a jury trial in this case, this issue cannot be tried to the bench. The BBB even admits in its Motion that whether fees are reasonable and necessary is a question of fact, citing *Bocquet v. Herring*, 972 S.W.2d 19, 20-21. (Tex. 1998). *See* Motion, p. 4.

4

Fee shifting provisions in which the reasonableness of a fee must be determined present a jury issue. The Texas Supreme Court has consistently interpreted similar fee shifting provisions to raise fact questions on the issues of reasonableness and necessity that entitle the party against whom the fees are to be assessed to demand a jury trial. *See Transcontinental Ins. Co. v. Crump*, 330 S.W.3d 211, 213 (Tex. 2011) (and cases cited therein); *see also Commerce & Indus. Ins. Co. v. Ferguson-Stewart*, 339 S.W.3d 744, 748-49 (Tex. App.—Houston [1st Dist.] 2011, pet. denied) (reversing and remanding for a jury trial the bench trial judgment awarding attorneys' fees). Chapter 27 is indistinguishable from other similar fee shifting provisions as discussed below.

Like the Citizens' Participation Act, the Texas Labor Code mandates that "the court" award attorneys' fees to a workers' compensation claimant under a fee shifting provision. *Crump*, 330 S.W.3d at 213. The injured worker submitted his attorneys' fees to the bench and the trial court awarded fees, but the insurer argued that it was entitled to a jury determination under the statute. *Id.* at 214. The Texas Labor Code provides:

> An insurance carrier . . . is liable for reasonable and necessary attorney's fees . . . if the claimant prevails on an issue on which judicial review is sought . . . . **[T]he court** shall apportion and award fees to the claimant's attorney only for the issues on which the claimant prevails. In making that apportionment, **the court** shall consider the factors prescribed . . . .

TEX. LAB. CODE § 408.221 (emphasis added). The Texas Supreme Court noted that the statute mentioned "the court" but was "silent on the critical judge-or-jury question." *Crump*, 330 S.W.3d at 229. The Court considered this silence to create an ambiguity and relied on the common law interpretations of other fee-shifting provisions to resolve the ambiguity. *Id.*

The Court noted that fee shifting provisions generally raise a fact issue. *Id.* at 230 ("In general, the reasonableness of statutory attorney's fees is a jury question."). For example, the Public Information Act also states that "the court" is to assess the amount of reasonable and

5

necessary fees. *Id.* at 230 (citing TEX. GOVT. CODE § 552.323). The Texas Supreme Court determined this to be a jury question. *See City of Garland v. Dallas Morning News*, 22 S.W.3d 351, 367 (Tex. 2000).

Likewise, the Declaratory Judgment Act permits "the court" to award reasonable and necessary fees. TEX. CIV. PRAC. & REM. CODE § 37.009. Because reasonableness and necessity are both fact issues, they are questions that are committed to a jury. *Crump*, 330 S.W.3d at 231 (citing *Bocquet*, 972 S.W.2d at 21). Applying this general rule to the statute in *Crump*, the Court decided that the Texas Workers' Compensation Act's fee shifting provision preserved the right to "submit the issue of the reasonableness and necessity of a claimant's attorney's fees, where disputed, to a jury." *Id.* at 231.

Thus, in three other fee shifting provisions mandating or authorizing "the court" to award fees, the Texas Supreme Court has determined that "the court" means the jury when it comes to the questions of reasonableness or necessity.[2] Just like those provisions, section 27.009 of the Civil Practice and Remedies Code requires "the court" to award "reasonable attorney's fees." TEX. CIV. PRAC. & REM. CODE § 27.009(a)(1). Section 27.009 should be interpreted consistently with the fee shifting provisions discussed above. Therefore, "the court" must mean "the jury" on the issue of reasonableness.

As set forth in the Hood Affidavit, there is at least a fact issue as to whether the Houston BBB's fees are reasonable. Ex. A (Affidavit of Lori Hood). John Moore has requested a jury and paid the jury fee. This case is on the jury docket. John Moore is entitled to have a jury find these facts.

---

[2] On the other hand, "the court" refers to the judge when it comes to determining whether justice or equity would permit the award of fees. *Crump*, 330 S.W.3d at 231.

**II.** **THE HOUSTON BBB HAS NOT PRESENTED CONCLUSIVE EVIDENCE THAT THE ATTORNEYS' FEES ARE REASONABLE AND NECESSARY.**

The Houston BBB's evidence of attorneys' fees is not conclusive. Indeed, it may not even be legally sufficient.

**A. The Houston BBB Must Provide Sufficient Evidence to Allow the Fact Finder to Make a Determination.**

The Anti-SLAPP statute mandates the award of "reasonable" attorneys' fees in an amount that satisfies "justice and equity." TEX. CIV. PRAC. & REM. CODE § 27.009(a)(1). Texas jurisprudence has always considered reasonableness and necessity together. *See*, *e.g.*, *El Apple I, Ltd. v. Oivas*, 370 S.W.3d 757, 762-63 (Tex. 2012) (considering necessity of the fees as a component of reasonableness). Thus, the Houston BBB is tasked with providing evidence that its attorneys' fees are both reasonable and necessary.

For the fact finder to make a meaningful determination and for the Court to conduct a meaningful review, the Houston "must provide sufficient details of the work performed." *Id.* at 764. This includes, "at a minimum, documentation of the services performed, who performed them and at what hourly rate, when they were performed, and how much time the work required." *Id.* The *El Apple* requirements have been elaborated upon to require "evidence of the time spent on specific tasks." *Long v. Griffin*, __ S.W.3d __, 2014 WL 1643271, at *3 (Tex. April 25, 2014).

The BBB bears the burden of proof in support of its Motion, and cannot simply provide general statements of the time spent multiplied by the hourly rate to the trier of fact. *Id.* The Texas Supreme Court has provided further guidance in the form of factors that should be considered when determining whether the requested compensation is reasonable. These guidelines are known as the "*Anderson* Factors" and are set forth below:

7

a. the time and labor required, the novelty and difficulty of the questions involved, and the skill required to perform the legal service properly;

b. the likelihood that the acceptance of the particular employment will preclude other employment by the lawyer;

c. the fee customarily charged in the locality for similar legal services;

d. the amount involved and the results obtained;

e. the time limitations imposed by the client or by the circumstances;

f. the nature and length of the professional relationship with the client;

g. the experience, reputation, and ability of the lawyer or lawyers performing the services; and

h. whether the fee is fixed or contingent on results obtained or uncertainty of collection before the legal services have been rendered.

*Arthur Anderson & Co. v. Perry Equip. Corp.,* 945 S.W.2d 812, 818 (Tex. 1997).

John Moore objects to the BBB's purported evidence in support of its Motion, *see infra*, pp. 15-17, and asserts that the jury is entitled to assess the credibility of the BBB's witnesses and determine the weight of the evidence and decide whether the BBB has met its burden of proof to recover fees and expenses in this matter.

**B. The Houston BBB Does Not Even Purport to Present Conclusive Evidence That Its Fees Are Reasonable and Necessary.**

Even if the Houston BBB's evidence passes the legal sufficiency test, it is certainly not conclusive. Indeed, the fees may well be unreasonable as a matter of law.

**1. The Houston BBB's proposed fee award is "patently unreasonable" according to Justice Hecht.**

In a case involving an eight-day trial, three depositions, and approximately 2,500 pages of document production, Justice Hecht opined that 890 hours of attorney time at a rate of over $500 per hour was "patently unreasonable." *El Apple I, Ltd.*, 370 S.W.3d at 765 (Hecht, J. concurring, joined by Wainwright, J. and Willet, J.). Justice Hecht also found it significant that

8

the attorneys for the opposing side spent only 266.7 hours at less than half the billing rate. *Id.* at 766. As Justice Hecht said, "Statutory fee-shifting is not a bonanza. It should take into account what the market should." *Id.*

In this case, the Houston BBB prepared and filed eight contested pleadings and motions in this Court including its 3-page answer and 10-page motion to dismiss. Ex. A ¶ 13. The Houston BBB also produced approximately 12,000 pages of documents and participated in several hearings. *Id.* In the appellate courts, the Houston BBB prepared and filed a brief of appellant, a reply brief of appellant, and a response to petition for review. *Id.* There was no trial. Discovery was limited, and no depositions were taken. *Id.* The Houston BBB seeks a bonanza for its attorneys that is not consistent with the market.

Furthermore, the fee invoices covering the periods from June 2012 through May 2013 (from the invoice dated July 23, 2012 through the invoice dated June 16, 2013) do not satisfy the most basic requirement by showing the time billed and the rate for that time.

> That proof should include the basic facts underlying the lodestar, which are: (1) the nature of the work, (2) who performed the service and their rate, (3) approximately when he services were performed, and (4) the number of hours worked.

*El Apple*, 370 S.W.3d at 763. These invoices do not show the rate for the persons performing the work at the time they performed the work. Although the Elkin Affidavit provides billing rates for certain attorneys and legal staff, it does not provide the rates for all of the persons identified in the invoices, and it does not provide the rates that were in effect at the time of the invoice. Therefore, these invoices may not be considered.

Finally, the Houston BBB's evidence of reasonableness does not satisfy the *Long v. Griffin* standard. *Long*, at *2. The billing invoices provided include 610 entries. Of those, only 373 provide the time spent on a specific task as required by the Texas Supreme Court. *Id.*; *See*

9

Ex. B-1 (Affidavit of Amelia Irving). The other 267 combine multiple tasks and actions into a single time entry (*i.e.*, block billing), making it impossible to determine whether the time was well-spent or wasted. *Id.* This form of block billing does not even permit the fact finder to break the hours spent down into general categories such as discovery, research, pleadings, witnesses, etc., and even if this kind of general breakdown were possible, it is inadequate under Supreme Court precedent. *See El Apple*, 370 S.W.3d at 763 (holding that such categorization "provides none of the specificity needed for the trial court to make a meaningful lodestar determination.").

Without even the ability to consider the time spent on general activities, much less specific tasks, the invoices are insufficient to support a finding that the fees included therein are reasonable and necessary.

### 2. The Houston BBB has not produced conclusive evidence that the fees represented in the invoices have been incurred.

Section 27.009 only allows recovery of fees that have been "incurred." TEX. CIV. PRAC. & REM. CODE § 27.009(a)(1). The Elkin Affidavit does not establish which, if any, of the fees invoiced were actually incurred by the Houston BBB in the sense that they were paid or that there is an obligation to pay them in full. The Elkin Affidavit states that "Porter Hedges has received payment for all work," but it does not specify what that payment amount was. Therefore, the Elkin Affidavit does not conclusively establish that the fees requested were incurred.

### 3. The Houston BBB has not produced conclusive evidence that the proposed fee award is reasonable and necessary.

As discussed above, the Houston BBB's invoices and the Elkin Affidavit do not satisfy the Texas Supreme Court's specificity requirements and are, therefore, not even some evidence of the reasonableness of fees, much less conclusive evidence. Indeed, much of the Elkin Affidavit is conclusory, *see infra*, pp. 15-17, because it is largely an expression of opinion

10

without the underlying facts necessary to support the conclusion. *Hou-Tex., Inc. v. Landmark Graphics*, 26 S.W.3d 103, 112 (Tex. App.—Houston [14th Dist.] 2000, no pet.). Even if the evidence were competent and were considered, it would raise a fact issue at best.

The reasonableness of the time spent in representing the Houston BBB is discussed only in general terms in paragraphs 7 through 9. Paragraph 7 lists the kinds of legal tasks that one would expect in any lawsuit, but only in vague terms. Paragraph 8 includes a chart of the month-by-month billing. Paragraph 9 is intended to prove up the invoices. In paragraph 10, the time is divided into four overlapping general categories. Paragraph 11 restates the total fees, costs, and expenses allegedly incurred. Paragraph 12 provides a conclusory estimate of future legal fees. None of these paragraphs discuss the reasonableness of the fees, much less relate the entries on the invoices to any particular tasks and explain why they are reasonable. In short, they do not provide any evidence that would allow a finder of fact to make a determination as to reasonableness.

Following is a review of the *Anderson* factors and the Houston BBB's treatment of each in the Elkin Affidavit.

> **a.** **The time and labor required, the novelty and difficulty of the questions involved, and the skill required to perform the legal service properly.**

The work on this case was not complex or difficult for the Houston BBB. Ex. A ¶¶ 16-17. Chapter 27 was designed to allow a defendant to easily and efficiently impose an immediate burden on the plaintiff to present "clear and specific prima facie evidence" of the elements of its claim. *Id.* The Houston BBB accomplished this with a short, ten page motion to dismiss.

While Chapter 27 was a new statute in Texas, it was based on a model that has been adopted in many states, and there had already been a number of other cases in Texas in which it had been used by other Better Business Bureaus (notably Dallas) as a defensive tactic. *Id.* ¶ 17.

11

Therefore, the Houston BBB did not have to reinvent the wheel. Furthermore, the legal briefing on the interpretation of the statute in the trial court and the court of appeals involved a straightforward application of well-known and long-established precedent. *Id.* ¶ 16. This text-based statutory construction was not difficult and involved legal authority that is so well known that little research should have been necessary to supply the principles. *Id.*

**b.  The likelihood that the acceptance of the particular employment will preclude other employment by the lawyer.**

Porter Hedges acknowledges in the Elkin Affidavit, that taking on this engagement did not prevent the firm from accepting any other clients.

**c.  The fee customarily charged in the locality for similar legal services.**

For a company the size of the Houston BBB, the rates indicated in the Elkin Affidavit and, presumably, charged in the attached invoices were excessive. Ex. A ¶ 15. In the stratified Houston legal market, small businesses like the Houston BBB (an in particular, non-profits) simply do not engage firms that charge fees in the upper range of the market. *Id.* If they do engage such firms, they do so at substantially discounted rates or as a pro bono matter. *Id.* For example, the rates charged by John Moore's attorneys were as much as 40% lower, resulting in total fees incurred by John Moore of only $165,000 for precisely the same litigation. *Id.*

**d.  The amount involved and the results obtained.**

Except for a handful of days in the fall of 2013, before its First Amended Original Petition was struck, John Moore did not seek a damage multiplier. Ex. A ¶ 19. Therefore, with the exception of the fees incurred to contest this filing, Porter Hedges' rationale that it spent extra time on the case for the other 21 months of litigation due to this pleading is disingenuous. *Id.*

12

Furthermore, Porter Hedges has obtained only a partial dismissal of John Moore's claims to date. This result, while beneficial to the Houston BBB, does not justify the suggestion that the Houston BBB's position has been fully vindicated or that John Moore's claims have no merit. An award of attorneys' fees is premature on this factor.

**e. The time limitations imposed by the client or by the circumstances.**

There were no onerous time limits imposed in this litigation. Ex. A ¶ 20. Chapter 27 allows 60 days to prepare and file a motion to dismiss. TEX. CIV. PRAC. & REM. CODE § 27.003(b). The Houston BBB had ample time to prepare the ten-page motion. Ex. A ¶ 20.

In the interlocutory appeal, the Houston BBB requested and received two extensions of time to file its principal brief, which John Moore did not oppose. *Id.* In the end, the Houston BBB had 108 days to prepare and file its brief of appellant. *Id.* John Moore filed its brief in response 35 days later. *Id.* After yet another extension of time, the Houston BBB had 27 days to prepare and file a brief in reply. *Id.* There was no time pressure in the appeal.

**f. The nature and length of the professional relationship with the client.**

Porter Hedges states that it has an almost 20 year relationship with the Houston BBB. The Houston BBB is a not-for-profit enterprise that markets itself as a performer of good works for the consumers of Houston. Ex. A ¶ 15. These types of clients are often represented pro bono or at substantially discounted rates and/or capped legal fees. *Id.* The Houston BBB's evidence is silent on its billing arrangement with the Porter Hedges. But the length of this relationship and the nature of the Houston BBB's activities suggest that, in the market, it would be able to engage counsel for substantially less than the amount that it now suggests that it incurred. *Id.* ¶ 21.

13

### g. The experience, reputation, and ability of the lawyer or lawyers performing the services.

Paragraph 14 set out the experience of some of the timekeepers who appear on the invoices. But there are many entries that include timekeepers whose experience is unstated. There is no evidence of reputation or of ability for any timekeeper.

Assuming that the lawyers involved were all "able" to a degree that is proportionate to their experience, it appears that the time spent on this matter is not reflective of that ability. Ex. A ¶ 22. For example, the appeal primarily involved basic, well-understood statutory construction principles. *Id* ¶ 16. No new legal ground was explored in the textual analysis. *Id.* It was simply a plain meaning-based legal argument. *Id.* The number of Texas Supreme Court cases setting out the plain language standard of interpretation are so numerous, it would be difficult not to know at least one off the top of the head. It is clear to John Moore that this legal argument should not have required so much time to prepare both in terms of research and of drafting such that it required two additional months of work. *Id.* ¶¶ 20, 22.

### h. Whether the fee is fixed or contingent on results obtained or uncertainty of collection before the legal services have been rendered.

The Houston BBB states that its fee agreement was fixed, but the agreement is not provided. Therefore, it is not certain what fees were incurred by the Houston BBB. The Elkin Affidavit states that "payment" has been made, but does not specify the amount of that payment.

Furthermore (and this may be an error, it is so unusual), the Elkin Affidavit states that the fees are billed to the nearest six-tenths of an hour. If correct, this policy would be a substantial departure from customary practice in the Houston legal market, and it would result in an inordinate inflation of the Houston BBB's legal invoices that would not be reasonable. Ex. A ¶ 23.

**III.** **AN AWARD OF FEES AT THIS JUNCTURE WOULD BE NEITHER JUST NOR EQUITABLE.**

For two reasons, the award of fees suggested by the Houston BBB would be neither equitable nor just. First, the application of Chapter 27 to John Moore's claims was not certain and there is no serious dispute that John Moore has been harmed by the Houston BBB's actions. Ex. A ¶¶ 7-10.

Second, John Moore still has viable claims against the Houston BBB that arise out of this transaction, which, but for the Houston BBB's insistence, would be joined to this same lawsuit. Under these circumstances, an award of over $400,000 in fees would serve neither justice nor equity and would be premature.

Indeed, as the Houston BBB has repeatedly stated, the claims in the second suit (Cause No. 2013-76215) arise out of the same transaction. The Houston BBB's motion to strike John Moore's First Amended Original Petition in the fall of 2013 caused a *de facto* severance of John Moore's claims into separate cases, and John Moore objects that such a splitting of its claims is improper and would result in prejudice to John Moore in the form of improper attempts by the Houston BBB to assert *res judicata*.

John Moore does not believe that *res judicata* would apply under the circumstances. *See Van Dyke v. Boswell, O'Toole, Davis & Pickering*, 697 S.W.2d 381, 384 (Tex. 1985) ("res judicata effects of an action cannot preclude litigation of claims that a trial court explicitly separates or severs from that action"); *Dolenz v. Continental Nat'l Bank*, 620 S.W.2d 572, 575 (Tex. 1981) (res judicata does not apply when conduct by a party estops it from asserting the prior active jurisdiction); *see also Wyatt v. Shaw Plumbing Co.*, 760 S.W.2d 245, 248 (Tex. 1988). But even though *res judicata* does not apply, the splitting of John Moore's cause of action is not consistent with Texas policy and should be corrected now that all statutory stays preventing a consolidation have expired. *See Pierce v. Reynolds*, 329 S.W.2d 76, 78 (Tex. 1959)

15

(claim splitting is improper); *Ryland Group, Inc. v. White*, 723 S.W.2d 160, 162 (Tex. App.—Houston [1st Dist.] 1986, no writ) (compulsory claims that arise out of the same transaction cannot be split into a separate cause).

Under the circumstances, John Moore moves for consolidation of Cause No. 2013-76215 with this case. TEX. R. CIV. P. 174(a); *cf. Wyatt.*, 760 S.W.2d at 247 (when the claims in a second lawsuit should have been brought in a previously-filed case, the second suit should be abated so the pleadings in the first suit can be amended to join the new claims). A consolidation will allow the entire controversy to be decided at one time by a single jury.

## IV. JOHN MOORE OBJECTS TO THE ELKIN AFFIDAVIT AS LEGALLY INSUFFICIENT TO SUPPORT AN AWARD OF ATTORNEYS' FEES.

The Elkin Affidavit contains general and highly conclusory statements which are legally insufficient to support an award of attorneys' fees. A conclusory statement is "one that does not provide the underlying facts to support the conclusion." *Hou–Tex, Inc.*, 26 S.W.3d at 112 (quoting *Rizkallah v. Conner*, 952 S.W.2d 580, 587 (Tex. App.—Houston [1st Dist.] 1997, no writ)). A general statement by an attorney that an amount sought is reasonable is not conclusive proof on the question of reasonableness. *Nguyen Ngoc Giao v. Smith & Lamm, P.C.*, 714 S.W.2d 144, 149 (Tex. App. —Houston [1st Dist.] 1986, no writ); *see also*, *Burrow v. Acre*, 997 S.W.2d 229, 236 (Tex. 1999) (expert must support opinion by reasoned basis). Furthermore, an agreement to pay an attorney a certain sum per hour is not proof of its reasonableness. *Leal v. Leal*, 628 S.W.2d 168, 171 (Tex. App.—San Antonio 1982, no writ).

John Moore's objections include but are not limited to Elkin Affidavit paragraphs 6, 20 and 25, which state that Porter Hedges billing rates are customary, reasonable and comparable to similar law firms in Harris County, Texas. These statements are conclusory and provide no underlying facts to support the conclusion.

16

John Moore further objects to Elkin Affidavit paragraph 8, which concludes that Moore has asserted numerous, meritless claims. This is a factually unsupported opinion and does not provide a valid basis for the award of attorneys' fees.

The Elkin Affidavit is also objectionable as to paragraph 9 and the referenced invoices attached as Exhibit 2. Specifically, the invoices contain multiple redactions to allegedly prevent disclosure of attorney-client privileged material. The sheer number of redactions suggests that the BBB, by and through its counsel, is not protecting attorney-client privilege but rather hiding duplicative billing entries and unnecessary work product. John Moore objects that Elkin Affidavit's reliance on the invoices contained in Exhibit 2 is based on insufficient, unreliable and conclusory evidence.

John Moore further objects to Elkin Affidavit paragraph 12, which contains an unsupported and conclusory opinion that the BBB will incur $130,000.000 in legal fees to defend and argue its Motion and any related appeals.

John Moore objects to Elkin Affidavit conclusory paragraphs 17, 18 and 22 which allude to the "complexity" of the Lawsuit without providing factual evidence of how Chapter 27 is a complex statute and delineating with specificity what legal analysis and research were required to prosecute the BBB's Motion.

John Moore further objects to Elkin Affidavit paragraph 21 which contains the conclusory statement that the hours expended by Porter Hedges, as reflected in the invoices attached as Exhibit 2, were reasonable. John Moore re-asserts its objections to reliance on the heavily redacted invoices as constituting insufficient and unreliable evidence.

17

John Moore objects to Elkin Affidavit paragraph 24 which concludes, without any supporting factual evidence, that Porter Hedges professionals were precluded from other employment due to the acceptance of this case.

John Moore further objects to Elkin Affidavit paragraph 28, which references the experience, reputation and ability of Porter Hedges without providing any factual support. John Moore also objects to the conclusory statement that Porter Hedges' billing rates were reasonable based on said experience.

John Moore objects to Elkin Affidavit paragraph 31, which states that Porter Hedges expenses are reasonable based on the length and complexity of this litigation. These statements are conclusory and provide no underlying facts to support the conclusion.

Finally, John Moore objects to Elkin Affidavit paragraph 32 as irrelevant to the BBB's Motion and unsupported by any evidence proffered in this matter.

In sum, the Elkin Affidavit contains conclusions unsupported by any reasoning connecting them to the facts as to the time and rates billed on specific tasks that would support a finding that the claimed attorneys' fees are reasonable and necessary. Thus, the statements in the Elkin Affidavit regarding attorneys' fees are conclusory and there is no evidence to support the reasonableness of these fees. *Coastal Terminal Operators v. Essex Crane Rental Corp.*, 2004 Tex. App. LEXIS 7257 at pp. 21-24 (Tex. App.—Houston. [14th Dist.] 2004, no pet) (citing *Burrow*, 997 S.W.2d at 235-37).

**MOTION TO COMPEL RESPONSES TO MOORE'S DISCOVERY**

John Moore objects to Defendant's request for fees and expenses incurred prosecuting its Motion to Dismiss. Among other reasons, these fees and expenses should be denied by the trier of fact because Porter Hedges has provided no substantive discovery responses to John Moore

18

regarding these requests, despite the fact that John Moore specifically requested such information in a request for production to the Houston BBB. Ex. C.

Defendant is in possession, custody or control of documents and information responsive to John Moore's request for production, yet Porter Hedges has produced no information regarding fees and expenses it has incurred beyond the firm's heavily redacted billing records. John Moore is entitled to discovery on these fees and expenses in order to test their reasonableness and necessity, and the Houston BBB should not be allowed to profit from its blatant disregard for its discovery obligations. John Moore thus seeks an Order overruling the Houston BBB's objections and compelling production of the requested documents.

## RESERVATION OF RIGHTS

John Moore expressly reserves the right to amend, modify, or supplement its Response to Defendant's Motion, and to assert additional grounds for objecting to the Motion, to the extent discovery and expert analysis reveal additional issues concerning the propriety of compensation sought in the Motion.

## PRAYER

WHEREFORE, John Moore respectfully requests that this Court deny Defendant's Motion for Award of Attorneys' Fees, Court Costs, Expenses, and Sanctions and for Entry of Final Judgment and sustain John Moore's objections to the evidence offered by Defendant contained herein. John Moore further requests that the Court grant its motion to consolidate and consolidate Cause No. 2013-76215 into this case and for the trier of fact to hear evidence to determine the facts raised by the parties. Finally, John Moore requests that the Court grant its motion to compel a response to its discovery requests. John Moore also requests that this Court grant such other and further relief as is equitable and just.

19

Respectfully submitted,

JOHNSON, TRENT, WEST & TAYLOR, LLP


By: /s/ Lori Hood
    Lori Hood
    Texas Bar No. 09943430
    Brian P. Johnson
    Texas Bar No. 10685700
    Tamara Madden
    Texas Bar No. 00783720
    919 Milam Street, Suite 1700
    Houston, Texas 77002
    (713) 222-2323
    (713) 222-2226 (*facsimile*)
    lhood@johnsontrent.com
    bjohnson@johnsontrent.com
    tmadden@johnsontrent.com

**ATTORNEYS FOR PLAINTIFFS**


**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing instrument has been served upon all counsel of record pursuant to Rule 21 and Rule 21(a) of the TEXAS RULES OF CIVIL PROCEDURE on this 12th day of June 2014.

Jeffrey R. Elkin                                                        *Via E-Service*
M. Harris Stamey
PORTER HEDGES, LLP
1000 Main Street, 36th Floor
Houston, Texas 77002
jelkin@Porter Hedges.com
mstamey@Porter Hedges.com


/s/ Tamara Madden
TAMARA MADDEN

329881